FILED
United States Court of Appeals
Tenth Circuit

June 11, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AUBREY DEAN ELWOOD,

Defendant - Appellant.

No. 11-6310

(W.D. Oklahoma)

(D.C. No. 5:11-CR-00079-R-1)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant Aubrey Dean Elwood pled guilty to one count of converting to his own use $1,847.90 belonging to the Social Security

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Administration ("SSA"), in violation of 18 U.S.C. § 641 (count one), and one count of using without lawful authority the means of identification of another person during and in relation to the offense charged in the first count, in violation of 18 U.S.C. § 1028A (count two). In a variance from the advisory sentence calculated under the United States Sentencing Commission, Guidelines Manual ("USSG"), the district court sentenced Elwood to a total of 120 months' imprisonment, comprised of ninety-six months on count one and twenty-four months on count two, to run consecutively. Elwood was also sentenced to a total of three years of supervised release and ordered to pay restitution in the amount of $1,847.90. This appeal followed, which we affirm.

## BACKGROUND

In 2003 or 2004, Merlin Manuel encountered Elwood walking along the side of a road in Oklahoma. Manuel gave Elwood a ride to Manuel's home in Louisiana, and permitted Elwood to stay in that home for three or four months. Manuel apparently returned home from work one day to discover that Elwood had stolen Manuel's truck, three credit cards, a Sam's Club card, a Sears credit card, his social security card, and his birth certificate. Manuel's truck was later found in Florida. In 2006, Elwood used Manuel's identity to purchase a trailer on credit. He subsequently pled guilty to grand larceny and "false personation of another to create liability," and received a twenty-year sentence comprised of four

years' imprisonment and a sixteen-year suspended sentence. Presentence Report ("PSR") at ¶ 57.

The instant offense stemmed from events occurring between Manuel and Elwood beginning in June 2010.[1] At that time, Manuel received Social Security disability benefits, which were deposited directly into his bank account. On June 24, Elwood entered a SSA office in Enid, Oklahoma, and identified himself as Merlin Manuel. Elwood changed Merlin's SSA record, altering his address, his direct deposit status and telephone number. He directed the SSA to discontinue the direct deposit of benefits to Manuel's bank account and to, instead, send those payments to a general delivery address in Enid, Oklahoma. On June 25, Elwood returned to the Enid SSA office, identified himself as Manuel, and requested a duplicate Social Security card.

On July 21, 2010, the SSA issued a disability check to Manuel in the amount of $1,847.90. In accordance with the changes made by Elwood, the check was mailed to the general delivery address in Enid, as opposed to Manuel's bank account. Elwood picked up the check and took it to a "Check Into Cash" store in

_____

[1]According to the PSR, Elwood was discharged to serve the suspended portion of his 2006 sentence on May 9, 2008. On September 26, 2008, a motion to revoke his suspended sentence was filed. On April 4, 2009, Elwood's suspended sentence was partially revoked and Elwood was directed to serve three years of confinement. He was finally discharged again to serve the suspended portion of his sentence on May 3, 2010. Thus, the instant offense occurred the following month, while Elwood was serving his suspended sentence for the 2006 conviction.

Ponca City, Oklahoma. While there, Elwood identified himself as Manuel, providing a Social Security card and an Oklahoma's driver's license in Manuel's name. A "Check Into Cash" employee cashed the Social Security check, giving $1,792.46 to Elwood after retaining a check cashing fee of $55.44.[2]

After he had cashed the Social Security check on July 21, Elwood was stopped following a traffic violation. During the stop, Elwood provided an Oklahoma driver's license in the name of Joshua Blaine Wolfe, but with a photograph of Elwood. While checking the status of that driver's license, the deputy discovered that Joshua Wolfe did not have a valid Oklahoma driver's license; rather, Wolfe had a Kansas driver's license which was listed as invalid. The deputy then arrested Elwood. The officer subsequently discovered that the Oklahoma license plate on Elwood's car actually belonged to a different car. He further found, while conducting an inventory of the car's contents, an open can of beer, an air soft gun, a switchblade knife and four pieces of mail, two addressed to Aubrey Elwood, and two addressed to Merlin Manuel.

Eventually, authorities determined Elwood's correct identity. They found in his possession, however, a Social Security card in the name of Joshua Wolfe.

---

[2]Investigators looking into the records of the "Check Into Cash" store in Ponca City discovered that Elwood had opened an account at "Check Into Cash" on June 14, 2010, using Manuel's identification. On that day, Elwood cashed three Western Union money orders issued either to Manuel or to "Aubrey Elwood Merlin Manuel." Investigators were unable to determine the source of these money orders.

Elwood was subsequently indicted for one count of theft of public money, in violation of 18 U.S.C. § 641, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. He pled guilty to both counts.

In preparation for sentencing, the United States Probation Office prepared a PSR, which calculated an offense level of four and a criminal history category of VI under the advisory Sentencing Guidelines. This yielded an advisory sentencing range of six to twelve months' imprisonment for count one. With respect to count two, the district court was required by statute to impose a twenty-four month sentence to run consecutively to the sentence on count one. See 18 U.S.C. § 1028A.

Elwood filed two objections to the PSR, one of which the district court granted, resulting in the deletion of one conviction contained in Elwood's criminal history. At his sentencing hearing, the district court stated at the beginning that it was "considering an upward departure . . . based upon the defendant's criminal history." Tr. of Sentencing Hr'g at 2, R. Vol. 3 at 2. In response, defense counsel argued that much of Elwood's criminal history stemmed from his mental health problems:

> [T]here is quite a history of mental issues in this case. . . . When [Elwood's] incarcerated, he's medicated, for the most part. It's when he gets out that he either is in a position where he needs to support himself by being employed and doesn't have the ability or the transportation to make it to mental health clinics to receive his medication, and as a result, he goes off his medication, and what we have here is a long history of criminal activity related to an

individual who is either intoxicated or on drugs or under the influence of something besides the medicine that he needs.

Id. at 4-5. Elwood himself reiterated this point:

> When I cashed the social security check, I was actually trying to find me a place where I could get back to where I am supervised, if that makes any sense at all. Because I do good in prison. I can do good in a halfway house, where when I got structured – where they give me the medicine every day and I take it. But when they just turn me loose in a place I've never lived before, I don't have no clue what to do out there. It's just . . . totally being lost. And all I do is go out there and start drinking because of the stress because I don't know what else to do.

Id. at 7.

After hearing these arguments, and considering the PSR and Elwood's sentencing memorandum, the district court sentenced Elwood to a total of 120 months' imprisonment, stating as follows:

> I've . . . considered the Sentencing Guidelines, which are only advisory, but also the sentencing factors set forth in 18 US Code 3553. Frankly, I'm very sympathetic with you. I know you've had a tough life and a lot to deal with, but I believe, if I'm counting right, that . . . since you were 18 years old, . . . you have 28 prior convictions, and you've just gone from one criminal activity to another. And additionally, you have I don't know how many additional arrests and pending charges and I believe that you're better off physically and mentally incarcerated and I'm satisfied that society is. I believe you're a danger to society. I don't think you're going to particularly hurt somebody, but you just keep committing crimes time and time again.
> And for . . . those reasons, it's the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 120 months. This consists of 96 months as to Count 1 and 24 months as to Count 2 to be served consecutively to one another.

Id. at 8.

Elwood argues that the upward "departure" on count one from the advisory Guidelines sentencing range of six to twelve months, to the imposed sentence of ninety-six months, is procedurally and substantively unreasonable.

## DISCUSSION

We review Elwood's sentence for reasonableness, and we defer to the district court under the "'familiar  abuse-of-discretion standard of review.'" United States v. Lopez-Macias, 661 F.3d 485, 488-89 (10th Cir. 2011) (quoting Gall v. United States, 552 U.S. 38, 46 (2007)).  An abuse of discretion will only be found where the district court has rendered "a judgment that is arbitrary, capricious, whimsical or manifestly unreasonable."  United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009) (citations omitted)  In the context of sentencing:

> [r]easonableness has a procedural and substantive component. Procedural error includes failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

Lopez-Macias, 661 F.3d at 489 (quotations and alteration omitted).  "A sentence is substantively reasonable when the length of the sentence reflects the gravity of the crime and the § 3553(a) factors as applied to the case."  United States v.

Martinez-Barragan, 545 F.3d 894, 898 (10th Cir. 2008) (quotation omitted).  We

review the district court's conclusions of law de novo and its findings of fact for

clear error.  See United States v. Collins, 511 F.3d 1276, 1279 (10th Cir. 2008).

## I.  Procedural Reasonableness

Elwood argues that the district court committed a procedural error by

incorrectly calculating his sentence on count one.  More specifically, he claims

the court failed to determine a "departure" under USSG §4A1.3, the Guideline

section applicable to "departures."  We disagree.  He did not object in the district

court to the calculation of his sentence on this ground.[3]

"Ordinarily, when a claim of error was not raised below, we review only

for plain error."  United States v. Lopez-Flores, 444 F.3d 1218, 1221 (10th Cir.

2006).  "Plain error occurs when there is (1) error, (2) that is plain, which (3)

affects substantial rights, and which (4) seriously affects the fairness, integrity, or

public reputation of judicial proceedings."  Id. at 1222 (internal quotation

omitted).  There was no error, let alone plain error, in the district court's

calculation of a sentence on count one.

Elwood correctly observes that the district court initially indicated to the

parties that it was considering "an upward departure in this case based upon the

---

[3]Elwood did, of course, challenge the imposition of an above-Guidelines
sentence on the basis of his criminal history.  He argued that his criminal history
was largely the result of mental illness and that he would not be dangerous if he
was placed in a situation where he could be regularly medicated.

defendant's criminal history." Tr. of Sentencing Hr'g at 2, R. Vol. 3 at 2. When

it actually imposed sentence, however, the court imposed a variance from the

advisory Guidelines range, rather than a departure. We have explained the

difference between a departure and a variance as follows: "A departure occurs

when a court reaches a sentence above or below the recommended Guidelines

range through application of Chapters Four or Five of the Sentencing Guidelines.

A variance occurs when a court enhances or detracts from the recommended range

through application of § 3553(a) factors." United States v. Sells, 541 F.3d 1227,

1238 n.2 (10th Cir. 2008).

Because in this case the district court indicated that its sentence was based

upon "the Sentencing Guidelines, which are only advisory, [and] also the

sentencing factors set forth in 18 US Code 3553," Tr. of Sentencing Hr'g at 8, it

is clear that the court varied.[4] It accordingly committed no error in failing to

---

[4]We note that the district court in this case used both "departure" and
"variance" language in describing its deviation from the advisory Guidelines
sentence. We have observed, however, that "[w]e are not bound . . . by the
district court's characterization of the . . . sentence—at least where, as here, the
court's characterization is inconsistent and ambiguous." United States v.
Alapizco-Valenzuela, 546 F.3d 1208, 1220-21 (10th Cir. 2008). Rather, we look
at the entire record to assess what the district court actually did in imposing
sentence. It is clear from the record in this case that the district court varied from
the advisory Guidelines range.

Elwood argues in his reply brief that the district court in this case imposed
an improper departure, comparing the initial statement of the court about a
possible "departure" with the written Statement of Reasons prepared by the court.
We find Alapizco-Valenzuela applicable here, where the court used language at
the sentencing hearing suggestive of both a departure and a variance, but where

(continued...)

determine the sentence in accordance with USSG §4A1.3 (the departure

provisions of the Guidelines).

Elwood also argues the district court failed to consider all the § 3553 (a)

factors.[5] When the sentencing court varies from the advisory Guidelines through

the application of the § 3553(a) factors,

> we simply consider whether the length of the sentence is
> substantively reasonable utilizing the abuse-of-discretion standard.
> We do not apply a presumption of unreasonableness to the sentence,
> and instead must give due deference to the district court's decision
> that the § 3553(a) factors, on a whole, justify the extent of the
> variance. The fact that we might reasonably have concluded that a
> different sentence was appropriate is insufficient to justify reversal
> of the district court.

United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1216 (10th Cir. 2008)

(citations and alteration omitted).

Applying that standard to this case, we perceive no error by the district

court. The district court stated that it was imposing an above-Guidelines sentence

---

[4](...continued)
the court's actual oral imposition of sentence indicated it was imposing a variance. There is no inconsistency between the sentencing hearing and the Statement of Reasons.

[5]To the extent Elwood argues here that the district court failed to adequately explain the sentence, a claimed procedural violation, we would also review this for plain error because he did not argue to the district court that it failed to adequately explain his sentence. Rather, Elwood argued only that his criminal history, caused by his mental illness, should not be the basis for a departure. Whether we review this issue for plain error or not, the result would be the same, inasmuch as we conclude that the district court did not err at all in selecting the sentence it did and accordingly did not abuse its discretion or commit plain error.

because of Elwood's extensive criminal history, consisting of twenty-eight prior convictions, beginning at the age of eighteen. See 18 U.S.C. § 3553(a)(1). The court further noted that Elwood went "from one criminal activity to another," and that he was "a danger to society." Tr. of Sentencing Hr'g at 8. Elwood argues that the court failed to consider *all* the § 3553 sentencing factors. We disagree. While the court expressed particular concern about the implications of Elwood's criminal history, it expressly stated that it had considered the sentencing factors set out in § 3553. That is a sufficient explanation: "The sentencing court . . . is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." United States v. Cordova, 461 F.3d 1184, 1189 (10th Cir. 2006) (internal quotations and citations omitted). The court committed no procedural error in its selection of Elwood's sentence on count one.

## II. Substantive Reasonableness

Elwood also argues his sentence on count one was substantively unreasonable. As indicated above, we must consider the substantive reasonableness of Elwood's sentencing, applying an abuse-of-discretion standard. Gall, 552 U.S. at 52. In doing so, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range . . . giv[ing] due deference to the district court's decision that the § 3553(a) factors,

on a whole, justify the extent of the variance." Id.; see also United States v. Reyes-Alfonso, 653 F.3d 1137, 1145 (10th Cir.), cert. denied, 132 S. Ct. 828 (2011).

Elwood argues the district court "targeted one factor alone when it focused on Mr. Elwood's criminal history—incapacitation. The district court excluded from consideration retribution, deterrence, and rehabilitation." Appellant's Principal Br. at 11. As indicated above, the district court considered all the § 3553 sentencing factors, including those relevant to Elwood's extensive criminal history. The court frankly determined that both Elwood and society would benefit from incarceration beyond what the advisory Guidelines recommended. We cannot say that the district court abused its discretion in selecting the sentence that it did.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence in this case.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge