FILED
United States Court of Appeals
Tenth Circuit

December 13, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

AUBREY DEAN ELWOOD,

    Defendant - Appellant.

No. 18-6077
(D.C. No. 5:11-CR-00079-R-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

Aubrey Dean Elwood, appearing pro se, challenges the district court's denial

of his motion to reconsider an order directing him to immediately pay $1,847.90 in

restitution to the Social Security Administration (SSA) or, if a balance remains upon

his release from confinement, to make monthly payments toward the award. Because

the district court acted within its discretion in declining to reconsider the restitution

order, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**

In July 2010, Elwood intercepted a Social Security disability check payable to Merlin Manuel in the amount of $1,847.90 and, using a duplicate Social Security card and a driver's license in Manuel's name, he identified himself as Manuel and cashed the check at a "Check Into Cash" store in Ponca City, Oklahoma. Authorities later arrested Elwood after he committed a traffic violation. On March 1, 2011, a federal grand jury indicted Elwood on charges of theft of public money, in violation of 18 U.S.C. § 641, and of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Elwood pleaded guilty to the two-count indictment.

On November 8, 2011, the district court sentenced Elwood to 120 months' imprisonment and three years of supervised release. The court also ordered Elwood to pay a $200 special assessment and $1,847.90 in restitution. Both payments were "due immediately," but given Elwood's limited finances,[1] the court provided for a post-confinement, interest-free payment plan, commencing 30 days after his release, of the greater of $100 per month or 10% of his gross monthly income. To incentivize earlier resolution, the court also recommended that Elwood participate in the Bureau of Prisons' (BOP) Inmate Financial Responsibility Program (IFRP) to make payments while in prison.

---

[1] At the time of sentencing, Elwood reported no assets and $1,864 in debt.

2

Elwood appealed the reasonableness of his prison sentence but didn't challenge the restitution order. We affirmed the sentence on June 11, 2012. *See United States v. Elwood*, 484 F. App'x 252 (10th Cir. Jun. 11, 2012).

Elwood participated in the IFRP between 2012 and 2014, paying the $200 special-assessment fee and $550 of his restitution. After that, the payments ceased, leaving an unpaid balance of $1,297.90. The United States later learned that Elwood had $3,250.42 in his inmate trust account, and on September 29, 2017, it moved for an order directing the BOP to offset the account and remit funds to satisfy Elwood's outstanding restitution obligation. When Elwood failed to respond, the district court granted the motion.

Claiming unawareness of the offset order, Elwood moved for reconsideration. As grounds for his motion, Elwood asserted that, in its November 8, 2011, judgment, the court properly specified a post-confinement payment schedule but impermissibly delegated to the BOP authority to collect restitution during his incarceration. Elwood insisted that, absent a proper schedule for immediate payment, restitution can't be enforced until the court's post-confinement plan takes effect.

Construing Elwood's motion as a request for relief from judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure, the district court concluded that its restitution order didn't delegate payment-collection authority to the BOP, but simply recommended that Elwood participate in the IFRP, which the BOP administers. The court elaborated that, even if it implicitly delegated collection authority to the BOP when it ordered restitution "due immediately," the offset order itself was permissible

3

because Elwood's financial condition had improved to a degree that he could afford to pay the outstanding restitution balance. *See United States v. Elwood*, 2018 WL 1884821 (W.D. Okla. Apr. 19, 2018).

Elwood now appeals the court's denial of his motion to reconsider.

## ANALYSIS

We review the district court's denial of a Rule 60(b) motion to reconsider for abuse of discretion. *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018). Our review is narrowly limited to determining whether "a definite, clear or unmistakable error occurred below." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005) (internal quotation marks omitted). "A reviewing court may reverse only if it finds a complete absence of a reasonable basis and is certain that the decision is wrong." *Id.* (internal quotation marks omitted).

Rule 60(b) specifies various circumstances in which a litigant may request relief from a final judgment or order, such as mistake, newly discovered evidence, and fraud. Subdivision (b)(6) includes the catchall that a court may relieve a party "for any other reason that justifies relief." Despite this broad language, relief under Rule 60(b)(6) is appropriate "only in extraordinary circumstances and only when necessary to accomplish justice." *See Cashner v. Freedom Stores*, 98 F.3d 572, 579 (10th Cir. 1996); *see Buck v. Davis*, 137 S. Ct. 759, 772 (2017).

Below, Elwood's primary argument for reconsideration was that the district court impermissibly delegated to the BOP authority to schedule restitution payments during his incarceration. This argument is doctrinally sound but factually inapposite.

4

The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3664(f)(2), requires a sentencing court to specify "the schedule according to which . . . restitution is to be paid." As Elwood suggests, the court can't delegate its payment-scheduling authority to the BOP. *United States v. Overholt*, 307 F.3d 1231, 1255–56 (10th Cir. 2002). Yet here, the district court didn't delegate anything—it ordered immediate restitution and specified a post-confinement payment schedule for any unpaid balance. Though the court recommended that Elwood make restitution payments through the IFRP while in prison, it didn't *compel* his participation, much less require that the BOP enroll him in the program to meet his "immediate" obligations.[2]

Elwood retreats from this argument on appeal, tacitly conceding that the district court didn't delegate payment-scheduling authority to the BOP.[3] Nonetheless, he maintains that the court's restitution order isn't immediately enforceable because he isn't under a "current obligation" to satisfy the order. Open. Br. at 4. In his view, the district court "deferred" any payment until the supervised-release portion of his

---

[2] In these respects, the restitution order differs materially from the order that we found impermissible in *Overholt*. There, the sentencing court ordered an indigent defendant to immediately pay restitution and provided that any unpaid balance "shall be paid while in custody . . . ." *Overholt*, 307 F.3d at 1254–55. Given the defendant's inability to immediately satisfy the award, the court's directive essentially required the BOP to set a payment schedule. We therefore held that the court impermissibly delegated to the BOP the payment-scheduling authority that the MVRA commits to judicial control. *Id.* at 1255–56.

[3] Elwood states that this case "differs from the Overholt [sic] . . . in that[] the sentencing court did set out an appropriate schedule of payments[] 'for the term of supervised release . . . .'" Open. Br. at 3.

sentence, making restitution enforceable only during that period and only to the extent that the court's post-confinement payment schedule requires. *Id.* at 3.

This argument ignores that the district court expressly ordered restitution "due immediately" in full. Although the court also provided for monthly payments if a balance remains upon Elwood's release from prison, it didn't "defer" the obligation until then. The MVRA grants courts "substantial discretion" to structure alternative forms of restitution payment in this manner. *See United States v. Wilson*, 416 F.3d 1164, 1170 (10th Cir. 2005) (noting that a court may impose a "single, lump-sum payment" or "payments at specified intervals"). Indeed, we have sanctioned nearly identical arrangements as proper exercises of discretion. *See, e.g., United States v. Bowen*, 225 F. App'x 765, 768 (10th Cir. May 31, 2007) (upholding order making restitution "due immediately" in full or in $100 monthly installments beginning 30 days after release from prison).

Elwood evidently believes that the district court's post-confinement payment schedule supersedes its "due immediately" directive. For this interpretation, Elwood mistakenly relies upon *United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015), a case in which we deemed a restitution order unenforceable beyond a specified monthly payment schedule. In that case, the district court orally sentenced the defendant to pay a $2.7 million restitution award in monthly installments, but then, in its written judgment, it noted that the "Schedule of Payments" was "$300 immediately, balance due." Finding no evidence in these oral and written directives that the court intended to make the full restitution award due immediately, we

6

concluded that the defendant was required to pay only $300 immediately and then to pay the "balance" in monthly installments. *Id.* at 1204. These facts differ markedly from the present appeal, where the district court clearly evinced its intent both at sentencing and in its judgment that Elwood immediately satisfy the full restitution amount.

Facing the futility of this line of argument, Elwood argues that the district court erred in ordering an immediate lump-sum payment without regard to his indigence. Elwood is correct, in the first instance, that a court's discretion in fixing restitution payments is constrained by the defendant's economic circumstances. *See* 18 U.S.C. § 3664(f)(2); *United States v. Ahidley*, 486 F.3d 1184, 1191 (10th Cir. 2007). But he is mistaken that the district court failed to consider his indigence. The court provided for a post-confinement, interest-free payment schedule as an alternative to immediate satisfaction because of Elwood's "inability to pay" the full restitution award. Elwood nevertheless faults the court for requiring an "indigent, homeless and mentally ill defendant" to "suddenly produce" the full award. Open. Br. at 3. Yet the award is "due" immediately, not "payable" immediately. In other words, Elwood has an immediate obligation to satisfy the award, but he may discharge that obligation by making payments over time. *See United States v. Bedonie*, 317 F. Supp. 2d 1285, 1329–32 (D. Utah 2004) (discussing this distinction).

In any case, even if Elwood could show error in the original restitution order, the district court didn't abuse its discretion in concluding that justice doesn't require relief. *See Cashner*, 98 F.3d at 579. To remedy an erroneous restitution order, a court

7

must reassess the defendant's economic circumstances and structure an appropriate payment. At the time the district court denied the motion to reconsider, Elwood had accumulated about $3,250.42 in his inmate trust account—more than enough to pay the outstanding restitution balance of $1,297.90. As a result, had the court amended its order, it would have made the entire restitution award payable immediately. And, given Elwood's improved finances, the court would have acted within its discretion in ordering satisfaction in full without provision for a payment schedule. *See* 18 U.S.C. § 3664(k) (authorizing restitution-order modifications based on a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution"); *see also United States v. Grigsby*, 665 F. App'x 701, 706–08 (10th Cir. Dec. 7, 2016) (applying 18 U.S.C. § 3664(k)). The result, in short, would be the same even if the court reconsidered its restitution order.

To the extent that Elwood urges reconsideration of the district court's offset order,[4] his arguments fair no better. Elwood had sufficient funds in his inmate trust account to satisfy the unpaid restitution balance at the time the district court offset the account. Under the MVRA, Elwood had an obligation to commit these funds to the remaining restitution award. *See* 18 U.S.C. § 3664(n) (requiring a prisoner who "receives substantial resources from any source . . . during a period of incarceration

---

[4] We liberally construe pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Some of Elwood's arguments on appeal appear directed at the district court's offset order and not at its restitution order. Although we generally decline to consider claims raised for the first time on appeal, *see Shoels v. Klebold*, 375 F.3d 1054, 1062 (10th Cir. 2004), we briefly entertain Elwood's challenge to the offset order because the attack is clearly unavailing.

. . . to apply the value of such resources to any restitution or fine still owed").[5] Thus, the court didn't err in holding that the funds were subject to seizure. Justice doesn't require a different result.

## CONCLUSION

The district court's order denying Elwood's motion to reconsider is AFFIRMED.

Entered for the Court


Gregory A. Phillips
Circuit Judge

---

[5] Elwood protests that the funds in his inmate trust account aren't the result of a "windfall," nor are they "substantial resources" subject to seizure under the MVRA. *See* Open. Br. at 4. Yet the MVRA requires prisoners to apply "substantial resources from *any source*"—not just from windfalls—to their restitution obligations. *See* 18 U.S.C. § 3664(n) (emphasis added). And, substantiality isn't measured in absolute terms alone. In this context, resources are substantial if they "positively exceed the sums needed by a criminal defendant to satisfy the financial obligations established at the time of sentencing." *United States v. Poff*, 727 F. App'x 249, 251 (9th Cir. Mar. 7, 2018). Here, there is no evidence that Elwood's funds were insufficient to satisfy any competing obligations. The funds were thus "substantial" and subject to seizure.