**UNITED STATES COURT OF APPEALS**

August 4, 2020

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL LYNN CASH,

    Defendant - Appellant.

No. 19-7040
(D.C. Nos. 6:15-CV-00117-JHP
6:11-CR-00057-JHP-1)
(E.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **HOLMES**, **MURPHY**, and **CARSON**, Circuit Judges.

---

Pro se Defendant-Appellant Michael Lynn Cash[1] requests a certificate of

appealability ("COA") to challenge the district court's denial of his Federal Rule

of Civil Procedure 60(b) motion, wherein he argued that the court, in denying him

28 U.S.C. § 2255 relief, had failed to consider one of his contentions.  *See*

---

[*]    This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1]    Because Mr. Cash is proceeding pro se, we construe his filings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *accord Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010), but "we will not 'assume the role of advocate,'" *United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (quoting *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008)).

*Spitznas v. Boone*, 464 F.3d 1213, 1218, 1225 (10th Cir. 2006) (concluding that "a COA is required to appeal from the denial of a true Rule 60(b) motion" and that the "contention that the district court failed to consider one of [the 28 U.S.C. § 2254 petition's] habeas claims represents a 'true' 60(b) claim"); *see also Peach v. United States*, 468 F.3d 1269, 1271 72 (10th Cir. 2006) (per curiam) (stating the same, in the context of a 28 U.S.C. § 2255 motion). The district court here denied Mr. Cash's Rule 60(b) motion on the ground that it had in fact considered and rejected the argument that Mr. Cash said it had overlooked. The court also denied him a COA. Because Mr. Cash has not "made a substantial showing of the denial of a constitutional right," we, too, **deny** him a COA. *Spitznas*, 464 F.3d at 1225 (quoting 28 U.S.C. § 2253(c)(2)); *accord Laurson v. Leyba*, 507 F.3d 1230, 1231 (10th Cir. 2007). Accordingly, we **dismiss** this matter.

## I. BACKGROUND

In 2011, an Oklahoma police officer pulled over Mr. Cash for failing to stop his vehicle completely at a stop sign. *United States v. Cash*, 733 F.3d 1264, 1267 68, 1271 (10th Cir. 2013) (affirming Mr. Cash's convictions on direct appeal). Mr. Cash told the police officer that he was late for a urinalysis appointment with his federal probation officer. The police officer saw "in plain view on the front passenger seat [of Mr. Cash's vehicle] a device consisting of an elastic band with a rubber bladder, a tube, and a clamp, which he recognized from

2

his prior experience as a device for defeating a urine drug test ('bladder device')." *Id.* at 1268.

Suspecting that Mr. Cash was planning to cheat his urine test, which is a crime in Oklahoma, the police officer called Mr. Cash's probation officer to the scene. *Id.* at 1269; *see id.* at 1274 (noting that it violates Oklahoma law "to '[a]ttempt to foil or defeat a urine, drug, or alcohol screening test'" (alteration in original) (quoting OKLA. STAT. tit. 63, § 7002(A)(2))). When the probation officer arrived about thirteen minutes later, he asked Mr. Cash to retrieve the bladder device that the police officer had seen. *Id.* at 1269. Mr. Cash rolled down his car's passenger window and handed the device to his probation officer, who called a supervisor for advice about what to do next. *Id.*

During that phone call, the probation officer saw "what he thought to be the butt of a pistol under a gym bag on the back seat of Mr. Cash's vehicle." *Id.* When Mr. Cash refused an order to exit his car, the officers pulled him from it, handcuffed him (after a struggle), and recovered a pistol, which was loaded, cocked, and had its safety off. *Id.* at 1269 70. During an inventory search of Mr. Cash's car, the officers found, among other drugs, ten grams of methamphetamine divided into eleven baggies. *Id.* at 1270. Mr. Cash later admitted to his probation officer that he was "dealing drugs" and "messing with some really bad people." *Id.*

A federal grand jury in the Eastern District of Oklahoma indicted Mr. Cash on charges of possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). *See id.* at 1271. Mr. Cash, represented by counsel, moved the district court "to suppress the firearm and the drugs found during the traffic stop as fruit of an illegal detention." *Id.* After presiding over an evidentiary hearing on the suppression motion, a magistrate judge issued a report and recommendation, concluding that the police officer who stopped Mr. Cash "would have been justified in simply arresting" him based on, among other things, the officer's knowledge "[of] the purpose for the [bladder] device, that [Mr. Cash] was on federal probation or supervised release, and [that he] was on his way to take a drug test." Findings and Recommendation at 10  11, *United States v. Cash*, No. 11-CR-00057 (E.D. Okla. Nov. 14, 2011), ECF No. 40.

The district court adopted the magistrate judge's report and recommendation and denied the motion to suppress. The court held in particular that the police officer who stopped Mr. Cash "*could* have arrested [him] and seized the [bladder device], without waiting for the probation officer," based on the officer's observation of the device "in plain sight." Order at 1, *United States*

4

*v. Cash*, No. 11-CR-00057 (E.D. Okla. Jan. 3, 2012), ECF No. 47. More specifically, the court stated that because the police officer could have arrested Mr. Cash for possessing the device, the officer did not violate his Fourth Amendment rights by detaining him pending his probation officer's arrival.[2]

A jury later convicted Mr. Cash of all of the charges in the indictment. *See Cash*, 733 F.3d at 1272. The district court then sentenced him under the Armed Career Criminal Act ("ACCA") to a total of 420 months in prison. *See id.* at 1272 & n.4.

On appeal, Mr. Cash challenged the district court's denial of his motion to suppress the gun and drugs. We affirmed, holding that his prolonged traffic stop which led to the officers finding that contraband in his car was not unreasonable because the police officer who stopped him had "reasonable suspicion that [he] was on his way to defeat a drug test." *Id.* at 1275 76. We noted in particular that the record showed that the officer had "observed the bladder device in plain view on the passenger seat in Mr. Cash's vehicle," that "he immediately associated [the device] with being used to cheat a drug test," and that "Mr. Cash told [the officer] at the beginning of the stop that he was on his way to a drug test with [his federal probation officer]." *Id.* at 1274. We

---

[2] Mr. Cash, represented by counsel, filed another suppression motion as well, in which he maintained that one of his post-arrest statements should be excluded under the rule of *Miranda v. Arizona*, 384 U.S. 436 (1966). Mr. Cash's second suppression motion is not relevant to the matter before us.

concluded that those facts "led [the officer] to reasonably believe that Mr. Cash was on his way to '[a]ttempt to foil or defeat a urine, drug, or alcohol screening test'" in violation of state law. *Id.* (alteration in original) (quoting OKLA. STAT. tit. 63, § 7002(A)(2)).

In 2015, Mr. Cash timely moved the district court to vacate his sentence under 28 U.S.C. § 2255, claiming, among other things, that his trial counsel had been ineffective. In his amended motion, Mr. Cash argued that his counsel was ineffective for failing to move the district court to suppress the gun and drugs as the fruit of an illegal search of the bladder device. He asserted that the officers had searched the bladder device by telling him that they wanted to see it (which caused him to roll down his car's passenger window and hand it to them) and that they saw the gun in his car only because he had rolled down its window. He argued that the officers' statement that they wanted to see the device turned him into "an agent or instrumentality of the police, triggering the Fourth Amendment." R., Vol. II, at 63 (Aplt.'s Am. § 2255 Mot., filed May 27, 2015). He also argued that the officers did not have probable cause to search the device because it "was empty" at the time, making it "an impossible prediction to believe it was being used to cheat a drug test." *Id.* at 64.

In reply to the government's opposition to his amended motion, Mr. Cash mentioned the plain-view doctrine, observing that it "permits a law enforcement

6

officer to seize an item without a warrant if (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object['s] incriminati[ng] character was *immediately apparent*; and (3) the officer had a lawful right of access to the object itself." *Id.* at 112 (Aplt.'s Reply to Gov't's Resp., filed Sept. 8, 2015) (citing *United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002)). He then reiterated his contention that the officers lacked "probable cause" to search the bladder device because it was "empty" and, thus, did not indicate he "was attempting to foil a urine test with [it]." *Id.* at 113.

In 2017, the district court denied Mr. Cash's 28 U.S.C. § 2255 motion in relevant part.[3] The court held that the officers did not search the bladder device in Mr. Cash's car when they told him they wanted to see it. The court observed in particular that Mr. Cash had "failed . . . to highlight any case wherein a defendant became a government agent against himself by complying with a lawful request at a traffic stop." *Id.*, Vol. III, at 20 (Op. & Order, filed Feb. 1, 2017). The court concluded that Mr. Cash's trial counsel "was not negligent for failing to advance such a specious theory" in his suppression motion. *Id.* The court did not directly

---

[3] The district court also granted Mr. Cash's 28 U.S.C. § 2255 motion in part by providing him relief on his claim that he was erroneously sentenced as an armed career criminal. The district court corrected his sentence by reducing his total term of imprisonment from an ACCA sentence of 420 months to a non-ACCA sentence of 360 months. We granted Mr. Cash a COA on this issue and affirmed the district court's amendment of his sentence as appropriate relief. *See United States v. Cash*, 727 F. App'x 542, 543 (10th Cir. 2018) (unpublished).

address Mr. Cash's sub-argument that the officers    in "searching" the device    had lacked probable cause because the device's incriminating character was not immediately apparent to them.  But the court stated in the context of denying another of his claims that when we held on direct appeal that "'the bladder device and Mr. Cash's own admission that he was on his way to take a drug test' provided reasonable suspicion to detain him," we thereby indicated that the device's incriminating character was apparent under "the totality of the circumstances."  *Id.* at 16 (quoting *Cash*, 733 F.3d at 1274).  Specifically, the district court made this ruling in addressing Mr. Cash's claim that his lawyer was ineffective for failing to call an expert to testify at the suppression hearing that it was unreasonable for law enforcement to believe that he was using the bladder device for an unlawful purpose.

Mr. Cash timely appealed from the district court's ruling on his 28 U.S.C. § 2255 motion.  The district court denied him a COA, but we granted him one for a claim unconnected to the matter now before us.  *See supra* note 3.  Although Mr. Cash also applied for a COA to challenge the district court's denial of his claim that his attorney had assisted him ineffectively by failing to argue, in connection with his suppression motion, that the officers searched his bladder device without probable cause when they told him they wanted to see it, we denied that aspect of his application, holding that it did "not deserve

8

encouragement to proceed further." R., Vol. IV, at 21 (Order Grant. in Part, and Den. in Part, a COA, filed Dec. 8, 2017).

After we affirmed the district court's judgment disposing of his 28 U.S.C. § 2255 motion, Mr. Cash moved the district court for relief under Federal Rule of Civil Procedure 60(b), arguing that, in denying his § 2255 motion, the court had failed to address his argument that the officers lacked probable cause to search his bladder device because "[its] incriminating character was not 'immediately apparent'" to them. R., Vol. I, at 27 (Aplt.'s Rule 60(b) Mot., filed Aug. 6, 2018). The district court initially construed the motion as a second or successive § 2255 motion and transferred it to us under 28 U.S.C. § 1631, but we concluded that it instead was a true Rule 60(b) motion "over which the district court had jurisdiction." *Id.* at 33 (Order, filed Nov. 15, 2018). So we remanded the motion to the district court so that it could consider the motion in the first instance.

On remand, the district court denied Mr. Cash's Rule 60(b) motion on the ground that it had "considered and rejected his 'inherent contraband' argument" in denying his 28 U.S.C. § 2255 motion. *Id.* at 147 (Order, filed June 14, 2019). Although it called the allegedly overlooked argument "his 'inherent contraband' argument," the court recognized that the argument concerned "whether or not the [bladder device's] incriminating character was immediately apparent." *Id.* (quoting Aplt.'s Rule 60(b) Mot. at 2). The court said in particular that it

9

"necessarily rejected" that argument when it denied Mr. Cash's claim that his trial counsel was ineffective for failing to call an expert to testify at his suppression hearing that it was unreasonable for law enforcement to believe that he was using the bladder device for an unlawful purpose. *Id.* at 148. The court then denied Mr. Cash a COA.

Mr. Cash timely appeals from the district court's order denying his Rule 60(b) motion, and he now applies to us for a COA. Exercising jurisdiction under 28 U.S.C. § 1291, we deny him a COA and dismiss this matter.

## II. DISCUSSION

Before a movant may appeal from the district court's denial of a true Rule 60(b) motion in a 28 U.S.C. § 2255 case, "we will require the movant to obtain a [COA] before proceeding with his or her appeal." *See Spitznas*, 464 F.3d at 1216 18; *see also Peach*, 468 F.3d at 1271 72. We may grant a COA only "if the applicant has made a substantial showing of the denial of a constitutional right." *Spitznas*, 464 F.3d at 1225 (quoting 28 U.S.C. § 2253(c)(2)). The Supreme Court has explained that the substantial showing an applicant must make to receive a COA to contest a district court's denial of his Rule 60(b) motion must answer two distinct questions affirmatively. *See Buck v. Davis*, --- U.S. ----, 137 S. Ct. 759, 775 (2017). The first question is substantive: "whether reasonable jurists could debate the merits of the prisoner's underlying constitutional claim." *United*

10

*States v. Handy*, 743 F. App'x 169, 173 (10th Cir. 2018) (unpublished) (citing

*Buck*, 137 S. Ct. at 775). And the second is procedural: "whether reasonable

jurists could debate the district court's procedural holding that the prisoner had

not made the necessary showing to reopen his case under [Rule 60(b)]." *Id.*

(citing *Buck*, 137 S. Ct. at 775). We may grant Mr. Cash a COA only if he clears

the "double hurdle" those questions present. *Okyere v. Rudek*, 732 F.3d 1148,

1149  50 (10th Cir. 2013).

Mr. Cash maintains that the district court erred in denying his Rule 60(b)

motion because, contrary to the court's assertion, it had overlooked one of his

search-related arguments in denying his § 2255 motion. More specifically,

according to Mr. Cash, the court's order denying his § 2255 motion shows that the

court misconstrued the nature of his allegedly overlooked argument and, thus, did

not actually consider it. *See* Aplt.'s Opening Br. at 9. We disagree and,

accordingly, deny him a COA.

The district court in denying Mr. Cash's Rule 60(b) motion recognized that

the argument that Mr. Cash alleged that it had overlooked concerned "whether or

not the [bladder device's] incriminating character was immediately apparent." R.,

Vol. I, at 147 (quoting Aplt.'s Rule 60(b) Mot. at 2). And the court stated that it

had rejected that argument, albeit implicitly, when it denied Mr. Cash's claim that

his trial attorney was ineffective for failing to call an expert to testify at the

11

suppression hearing that it was unreasonable for law enforcement to believe he was using the bladder device for an unlawful purpose. *Id.* at 148. Indeed, in its order denying that claim, the court noted that although the bladder device was "not inherently contraband," the officers had rightly come to believe that it was "evidence of a crime due to the totality of the circumstances." *Id.*, Vol. III, at 16. The court further noted that we "ha[d] already rejected Mr. Cash's argument . . . by holding [on direct appeal that] 'the bladder device and Mr. Cash's own admission that he was on his way to take a drug test' provided reasonable suspicion to detain him." *Id.* (quoting *Cash*, 733 F.3d at 1274). Under the logic of the district court's assertion, if the bladder device's incriminating character had not been readily apparent under the totality of the circumstances, our court could not have held that it gave the officers reasonable suspicion to detain Mr. Cash.

We ordinarily give some weight to a district court's statement that it has considered an issue in making a decision. *See United States v. Gantt*, 679 F.3d 1240, 1248 (10th Cir. 2012) (rejecting the defendant's argument that the district court did not consider his advisory Guidelines sentence in sentencing him, based on the sentencing court's statement that it was "supposed to give respectful consideration to the guidelines"); *see also United States v. Elwood*, 484 F. App'x 252, 257 (10th Cir. 2012) (unpublished) (rejecting the defendant's argument "that

12

the court failed to consider *all* the § 3553 sentencing factors" because the court "expressly stated that it had considered the sentencing factors set out in § 3553"). And we see no reason to doubt the district court's statement here that it considered and rejected Mr. Cash's allegedly overlooked argument in denying his claim that his attorney was ineffective for failing to call an expert witness at the suppression hearing.

Mr. Cash asserts that we should disregard the district court's statement that it considered and rejected his contention that the bladder device's incriminating character was not immediately apparent because the court labeled that argument his "'inherent contraband' argument." Aplt.'s Opening Br. at 9 (quoting R., Vol. I, at 148). He reasons that the argument he alleges that the court overlooked did not concern whether the bladder device was per se contraband. Instead, it related to whether the circumstances of his possession of the bladder device made its unlawful purpose apparent to the officers at his traffic stop. Consequently, reasons Mr. Cash, the district court's reference to his argument as the "inherent contraband" argument signals that the court did not actually consider his argument.

We conclude, however, that the district court's shorthand labeling of Mr. Cash's argument as the "inherent contraband" argument does not show that reasonable jurists could debate the district court's ruling that it had already

13

considered and rejected Mr. Cash argument. Nor does it matter that the court considered and rejected the argument in the context of Mr. Cash's expert-witness-related ineffectiveness claim instead of his bladder-device-search-related ineffectiveness claim. Although Mr. Cash presented the argument most prominently in the context of the latter claim, *see* R., Vol. II, at 111 13, the argument was also relevant to the former claim, as the district court's rejection of the claim made clear, *see id.*, Vol. III, at 16 (rejecting Mr. Cash's expert-witness-related ineffectiveness claim and noting that the officers were justified in reasonably suspecting that Mr. Cash was using the bladder device for an unlawful purpose based on "the totality of the circumstances").

Because Mr. Cash fails to demonstrate "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" that he does not warrant Rule 60(b) relief because the court had already considered and rejected his allegedly overlooked argument, we deny him a COA. *United States v. McKye*, 947 F.3d 1293, 1294 (10th Cir. 2020) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see Buck*, 137 S. Ct. at 775 (observing that the procedural question raised by an application for a COA to contest the denial of a Rule 60(b) motion is "whether reasonable jurists could debate the District Court's procedural holding that [the applicant] had not made the necessary showing to reopen his case under [Rule 60(b)]"); *see also Handy*, 743 F. App'x at 173 (stating that "the

14

procedural question is whether reasonable jurists could debate the district court's procedural holding that Mr. Handy had not made the necessary showing [under Rule 60(b)(6)] that the § 2255 judgment was void because the district court had not ruled on [his] underlying constitutional claim").

### III. CONCLUSION

For the foregoing reasons, we conclude that Mr. Cash does not warrant a COA because he has not "made a substantial showing of the denial of a constitutional right." *Spitznas*, 464 F.3d at 1225 (quoting 28 U.S.C. § 2253(c)(2)); *accord Laurson*, 507 F.3d at 1231. We, thus, **DENY** him a COA and **DISMISS** this matter.[4]

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[4] Mr. Cash's motion to supplement his request for a COA and opening brief is denied.